KEFFER (NEWMAN v.). See Case No. 10,-177.

## Case No. 7,646.

### KEGAN v. The AMARANTH.

[N. Y. Times. April 4, 1854.]

District Court, S. D. New York. 1854.

MARITIME LIEN—SERVICES OF STEVEDORE—LIENS NOT MARITIME—COSTS—JURISDICTION.

[1. The services of stevedores in loading or unloading a vessel are not maritime in their nature, and they have no lien therefor enforceable in admiralty.]

[2. A lien on a vessel given by state statute for services not maritime in their nature—such as that of stevedores—is not enforceable in admiralty.]

[3. A successful respondent should not be denied costs because libellant has mistakenly sued in admiralty instead of in the state courts in disregard of a long-settled law.]

[This was a libel in rem by Owen Kegan against the bark Amaranth for stevedores' services.]

Mr. Rodman, for libellant.
Mr. Dillon, for claimants.

HALL, District Judge. This was a libel in rem founded upon a claim for services rendered by the libellant and his workmen

in removing ballast from the bark Amaranth, and in carting such ballast away after it had been cast upon the wharf. On the opening of the pleadings it was suggested by the court that the decisions which denied the right of a stevedore to proceed in rem against a vessel for his services in stowing her cargo must, if sustained, be held conclusive against the libellant; for if the stevedore had no lien for his service—a service rendered wholly upon shipboard—the libellant must necessarily fail in sustaining a lien for services which had much less claim to be considered as strictly maritime in their character. The advocate for the libellant nevertheless desired to present the question for more deliberate consideration, and at his request, the libellant's evidence, to show that the services charged for had been rendered by the libellant, was taken by the court. The question thus presented has been since elaborately and ably argued, and these arguments and the authorities cited have been deliberately considered.

In the absence of any judicial decision, and especially in view of the very decided opinion in favor of the existence of a lien in such cases, which seems to have been entertained by a highly respectable elementary writer upon the subject of admiralty jurisdiction (Ben. Adm. § 285), I should not have denied the relief sought in this case without considerable hesitation and doubt. But the question, at least in this court, must be considered as settled by authorities, which I have neither the right nor the inclination to disregard. In the case of McDermott v. The S. G. Owens [Case No. 8,748], Mr. Justice Grier held that a stevedore had no lien for his services in loading and stowing the cargo of a foreign vessel, and he declared that the service was "in no sense maritime, being completed before the voyage is begun or after it is ended, and they [the stevedores] are no more entitled to a lien on the vessel than the draymen and other laborers who perform services in loading and discharging vessels." The right of a stevedore to proceed in rem was denied by the learned judge of this district as early as 1831, and the doctrine then asserted has, I understand, been ever since maintained in this district. These authorities are decisive. If the stevedore has no lien, there was certainly none in the present case. It is impossible to make any distinction favorable to the libellant between the cases cited and that now under consideration.

It was insisted by the advocate for the libellant that if the service mentioned in the libel was not strictly maritime in its character, he nevertheless had a lien for the service under the provisions of 2 Rev. St. N. Y. p. 405, § 1; but I do not deem it necessary to discuss that question. In the cases already referred to, the existence of the lien was denied upon the ground that the service was not maritime; for, if it had been mari-

time, the existence of the lien as against a foreign vessel would have been conceded without hesitation, and it necessarily follows that the contract and service upon which the libellant founds his claim in the present case were not maritime, or of such a character as to give jurisdiction to this court. If neither the contract nor the service was in its nature or character essentially maritime, it is not material to inquire whether the statute of New York gave the libellant a lien, as this court has no jurisdiction to enforce a statutory lien not founded upon a maritime contract, or growing out of a maritime service or marine tort. The jurisdiction depends upon the nature of the subject-matter of the contract or controversy, and not upon the existence or non-existence of a lien. The latter only affects the form of the proceedings and the character of the remedy, and if in this case the statute gave a lien to the libellant, he should have sought his remedy under the statute before the officers or tribunals of the state. The libel in this case must be dismissed for want of jurisdiction, and with costs.

It was strongly urged by the advocate for the libellant that if the libel should be dismissed for want of jurisdiction, no costs should be given to the respondents, as they omitted to make the objection by their answer, and the libellant had shown that he had an honest claim,—his only fault being a mistake in the forum in which he had chosen to assert it. I should have been much inclined to refuse costs, if such a course could have been justified upon the principle under which costs are given or refused in this court. But costs in admiralty, though given or denied in the discretion of the court, are always to be awarded to a respondent who succeeds in his defence, unless strong equities exist to justify a different course. The doctrine upon which I have deemed it my duty to dismiss the libel for want of jurisdiction, has been the settled law of this district for more than twenty years, and the decision of Mr. Justice Grier was reported in 1849. Under such circumstances, I have felt bound to award costs to the prevailing party.